# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

| | |
|---|---|
| **DEBORAH MILLS** | **CIVIL ACTION NO. 5:17-1088** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF SHREVEPORT** | **MAG. JUDGE MARK L. HORNSBY** |

## <u>RULING</u>

Plaintiff Deborah Mills ("Mills") brought this employment discrimination action against her current employer, the City of Shreveport ("the City"). Before the Court is a Motion for Summary Judgment [Doc. No. 20] filed by the City. Mills opposes the motion. [Doc. No. 25]. The City filed a Reply [Doc. No. 28].

For reasons assigned below, the Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I.     FACTS AND PROCEDURAL HISTORY[1]

Mills is employed by the City as a Captain with the Shreveport Fire Department ("SFD"). She serves as an EMS Supervisor.

---

[1]In her "Traversal of Statement of Facts," Mills responds to the City's Statement of Undisputed Facts [Doc. No. 20-5] by denying several statements "as written." *See* [Doc. No. 25-1]. Under Local Rule 56.1, the moving party must accompany its motion for summary judgment with a "separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Under Local Rule 56.2, the opposing party "shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." To the extent that Mills actually controverted facts then she is in compliance with LR 56.2, but merely denying the City's statement "as written" provides no clue to the Court as to what part of the statement she denies and what part she admits. Therefore, the Court has had to rely on the memoranda and evidence to determine what facts are truly undisputed or disputed.

On December 10, 2015, the SFD received a call requesting assistance for a patient experiencing cardiorespiratory distress.

The crew of Fire Engine-8 responded to the call and found the patient face down in a bathtub, bleeding from her mouth and nose. The patient had no pulse and had stopped breathing. The firefighters began CPR in an attempt to restore the patient's pulse and inserted a "King LT" airway device, which is a laryngeal tube that allows for mechanical ventilation.

An SFD ambulance unit, "Sprint-8," arrived at the scene as the crew of Fire Engine-8 continued to provide emergency care. Mills, acting in her capacity as EMS Supervisor, also responded to the scene separately in her department vehicle (Unit C-82).

Mills contacted the physician at the Willis-Knighton North emergency room and requested that the physician authorize the administration of nitroglycerin as the patient was not responding to the other treatment. According to firefighters, a pulse was detected.

The City contends that Mills had obtained authorization to administer nitroglycerin sublingually, but that when the patient's mouth could not be accessed, she ordered responders to rub the nitroglycerin into the patient's chest. It is not within protocol to administer sublingual nitroglycerin topically to the chest. [Doc. No. 20, Exh. A, pp. 30-31; Exh. A-6]. The responders did not follow Mills' alleged instructions. In support of these allegations, the City provided copies of complaints received about the incident. [Doc. No. 20, Exh. A-4 & A-5].

Mills denies these allegations, however. She further contends that, during this same incident, a male firefighter suggested nitroglycerin be sprayed down the patient's throat, which is not protocol. She further contends that another male firefighter suggested field termination of

treatment without talking to the family or EMS supervisor, also contrary to protocol. Neither of these firefighters was a supervisor, nor did either of the suggested actions take place.

Mills was advised on January 8, 2016, that an internal affairs investigation had been initiated. On January 12, 2016, the investigation was assigned to Fire Investigator Chris Robinson ("Robinson"). From January 12, 2016, to February 8, 2016, Robinson conducted eyewitness interviews. According to Robinson, all firefighters who were witnesses to the event said that Mills issued the command to apply the sublingual nitroglycerin topically. On January 26, 2016, Robinson interviewed Mills, who denied issuing the command.

On February 8, 2016. Robinson issued an investigation report to Chief Wolverton, finding that Mills had given treatment orders in violation of departmental rules and regulations.

On February 23, 2016, four physicians who serve as EMS medical directors and under whose licenses the EMS personnel provide emergency services wrote a letter to Chief Wolverton expressing concerns about Mills' alleged conduct. Mills contends that the letters were generated at the request of Chief Wolverton and based on false information provided to the physicians by Chief Wolverton.

On March 4, 2016, Chief Wolverton was advised that Mills had requested copies of any variances or complaints on her that had gone to the Quality Review Board. Mills' request was denied at that time, and later that day she was advised that the Pre-Disciplinary Conference had been set for March 7, 2016. Mills responded that she was on vacation, and her counsel was not available on March 7, 2016, but Chief Wolverton insisted that the Pre-Disciplinary Conference go forward on that date. The Pre-Disciplinary Conference was held on March 7, 2016, and Mills

was informed of the evidence supporting the alleged violation of department rules and regulations.  While she was permitted to respond, she did not have her counsel present.

On March 21, 2016, Mills made a confidential complaint to Human Resources about Chief Wolverton; Firefighters David White, Jeff Cameron, Daniel Buckingham; Engineers Evan Bayton, Jason Matthews, and Chris Elmore; Fire Captains Bobby Roberts and Todd Olague; and Dr. Avery Callahan,  alleging harassment on the basis of sex and race.  She alleged that the complaint against her was not proper because it was anonymous and procedures were not followed.  She further alleged that she and another female captain had been the subject of "great opposition and resistance from the beginning."  [Doc. No. 20, Exh. B].  She indicated that "work is a hostile work environment." *Id.*

On May 5, 2016, Mills met with Chief Wolverton and received a remediation plan.  She was placed on paid suspension from practicing as a paramedic until she completed remediation training between May 9 and 30, 2016.  She was further placed on probation for one year.  Because of the City's actions, Mills contends that she suffered a loss of pay from her lack of ability to practice as a paramedic while off duty.

On May 6, 2016, Mills filed an appeal of Chief Wolverton's decision, and a Civil Service Board Hearing was scheduled for September 7, 2016.

On May 8, 2016, Mills filed a supplementary request with the Civil Service Board that it "investigate the suspension of [her] paramedic privileges," as well as "the practices and acts of . . . Chief . . . Wolverton and Captain Todd Olague."  [Doc. No. 20, Exh. E].  She detailed the alleged actions against her and asserted that she had been subjected to discrimination because she

is "black and female," retaliation for the harassment complaint she made, and that "[t]his is becoming more and more a hostile work environment." *Id.*

On May 23, 2016, prior the Civil Service Board Hearing, Mills completed remediation training, but she remained on probation.

On September 7, 2016, a Civil Service Board Hearing was held.

After her counsel had conducted a lengthy cross examination of Chief Wolverton (the first witness at the hearing), the City offered to resolve the matter by granting Mills all of her requests with the exception of attorney's fees. As part of the agreement, Mills was removed from probation effective immediately; Chief Wolverton would issue a new Variance Policy requiring all complaints regarding patient care issues be filed in writing through the procedures set forth in the policy, prohibiting employees from filing complaints anonymously or making verbal complaints to the Medical Director, and subjecting employees to discipline if they do so; the City agreed to pay for a mediator to meet with Mills and Dr. Callahan to address any lingering issues; and Chief Wolverton would discuss the anonymous complaint with Dr. Callahan to investigate and determine how she received it. [Doc. No. 25-5, Exh. 27]. Mills continued her duties as EMS supervisor in the same capacity, for the same pay, as before the investigation. The Civil Service Board awarded Mills $1,000 in attorney's fees to be paid by SFD, over SFD's objection. *Id.*

SFD appealed the attorney's fee ruling to the Louisiana First Judicial District Court, which affirmed the award.

On October 3, 2016, Mills filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging harassment, discrimination, and retaliation on the

basis of sex and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and LA. REV. STAT. 23:332, *et seq.*, for the time period of January through August 2016.

On July 27, 2017, the EEOC terminated its proceedings because more than 180 days had passed since it issued a Notice of Right to Sue to Mills.

On August 29, 2017, Mills filed the Complaint[2] in this Court asserting sex and race discrimination and harassment claims, as well as retaliation claims, all under Title VII, and for intentional infliction of emotional distress under Louisiana law. She sought declaratory and injunctive relief and damages.

On April 8, 2019, the City filed the instant Motion for Summary Judgment [Doc. No. 20], asserting that it is entitled to judgment as a matter of law on Mills' discrimination and harassment claims under Title VII and her intentional infliction of emotional distress claim under state law.

On April 29, 2019, Mills filed a memorandum in opposition to the Motion for Summary Judgment [Doc. No. 25]. Mills responds that she has presented evidence sufficient to raise a

---

[2] On April 9, 2019, Mills filed an Amended Complaint [Doc. No. 24] re-asserting her prior claims against the City; asserting claims against Chief Wolverton in his individual capacity under 42 U.S.C. §§ 1981 and 1983, as well as state law; and adding claims against the City under 42 U.S.C. §§ 1981, 1981a, and 1983. She states that the deadline for amendment of pleadings was extended to June 27, 2019, under the Court's February 5, 2019 Scheduling Order [Doc. No. 19]. While that statement is correct, Mills failed to consider the application of Federal Rule of Civil Procedure 15(a)(1)(2). Under that Rule, a plaintiff must obtain leave of Court to amend her Complaint after the Defendant answers. Inexplicably, the Clerk of Court failed to issue a deficiency notice to Mills. The Clerk of Court is hereby instructed to issue that notice, giving Mills time to correct the deficiency by filing a motion for leave stating her reasons for amendment. The City shall be given an opportunity to respond.

genuine issue of material fact for trial that she suffered adverse employment actions based on race and sex discrimination and retaliation, that she has shown that she was subject to a hostile work environment, and that the City's proffered reasons for her treatment are false and pretextual.

On May 14, 2019, the City filed a reply, stating that the "instant Title VII suit" should be dismissed for failure to establish a *prima facie* case or, alternatively, under the remainder of the burden-shifting analysis because Mills did not suffer an adverse employment action, has failed to identify like comparators, and has failed to provide a causal link for her retaliation claim. The City also moved for summary judgment on Mills' intentional infliction of emotional distress claims. Although the City asserts that "[a]ll of Plaintiff's clams should be dismissed as a matter of law," the City did not move for summary judgment on or address Mill's hostile work environment claims.[3]

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

_____

[3] The City did not move for summary judgment on Mills' new claims in the Amended Complaint because the Amended Complaint was filed after the instant motion. However, as the Court has pointed out, those claims are not properly before it anyway.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[1]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine

---

[1] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

### B.    Race and Sex Discrimination under Title VII[4]

Mills alleges that the City discriminated against her on the basis of race and sex by requiring her to complete a remediation plan and to serve probation for an incident which she denies happened at all. The City argues that Mills has failed to establish a prima facie case of discrimination, and, that, even if she has, she has failed to show that its legitimate, non-discriminatory reasons are pretextual.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race  . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).

---

[4] Mills cites to the Louisiana anti-discrimination law as part of her memorandum, but she did not assert a claim in her Complaint under that statute, only under Title VII. However, even if she had done so, such claims are analyzed under the same standard as Title VII. Given the Court's ruling on her discrimination and retaliation claims, amendment of her Complaint to assert such claims would be futile.

When there is no direct evidence of race or sex discrimination, as in this case, the Court applies the burden shifting test established by *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973). Under the *McDonnell Douglas* method, a plaintiff must first establish a prima facie case of discrimination with allegations and proof that the plaintiff (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated less favorably than those outside the protected class. *See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Rutherford v. Harris Cty.*, 197 F.3d 173, 184 (5th Cir. 1999). With regard to the fourth element, a plaintiff must show that "'other similarly situated employees who were not members of the protected class'" were treated more favorably "'under nearly identical circumstances.'" *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (quoting *Lee*, 574 F.3d at 259); *see also Morris v. Town of Independence*, 827 F.3d 396, 401(5th Cir. 2016). In other words, the plaintiff's conduct drawing "'the adverse employment decision'" must have been "'nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.'" *Paske*, 785 F.3d at 985 (quoting *Lee*, 574 F.3d at 260) (additional internal quotation marks and citations omitted).

If Mills establishes a *prima facie* case of discrimination, the burden shifts to the City to articulate legitimate, non-discriminatory reasons for the adverse actions against her. *See Lee*, 574 F.3d at 259. If the City satisfies this burden of production, the burden shifts back to Mills, who must "offer sufficient evidence to create a genuine issue of material fact "either (1) that the City's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the City's reason, while true, is only one of the reasons for its conduct, and another

motivating factor is [Mills'] protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citing same in the context of a Title VII race discrimination case). In this case, Mills seeks to show that she has met her prima facie burden and that the City's purported reasons for placing her on paid suspension, requiring her to take additional EMS classes (the remediation plan), and to serve a probationary period are pretext for race and sex discrimination.

1. ***Prima facie* Case.**

It is undisputed that Mills falls within a protected class as a Black woman and that she was and is qualified as Fire Captain and EMS supervisor for the SFD.

However, the City argues that Mills cannot make out the third and fourth elements because she did not suffer an adverse employment action, and she was not treated less favorably than other similarly situated employees outside her protected group.

a. **Adverse Employment Action**

With regard to the third element, the City argues that Mills did not suffer an adverse employment action because she was never removed from her position, never suffered a loss in pay, and she was fully restored by the settlement prior to the Civil Service Board decision.

Mills responds, largely, with factual allegations regarding her alleged mistreatment by SFD. However, when specifically addressing the *McDonnell Douglas* test, she argues that she suffered a significant change in her employment status based on the fact that her paramedic duties were suspended, and, as a result, she suffered a loss of income because she could not work as a paramedic off duty while completing remediation. Additionally, she cites the fact that she

was given one-year probation which would continue after she completed remediation, a disciplinary action that was allegedly unprecedented in the history of the SFD. She contends that the Remediation Plan provided that she be removed from her position as an EMS Supervisor during the one-year probation period if she violated any SFD policy or provided less than the standard of care, and that this provision was in violation of the rule applicable to her in a civil service protected position. Finally, she contends she was required to appear and address the allegations against her on one of her vacation days.

The City responds the facts of this case do not support a finding of adverse employment action under the precedent, pointing out that, even if the appeal were not considered, at worst she suffered a three-week suspension with pay from operating as a paramedic with the SFD with a one-year probationary period. The City points out that she was not prevented from working as a paramedic otherwise, only as a paramedic with the SFD. Moreover, as a result of her successful appeal, the probation was set aside, and she was fully restored to her position.

Adverse employment actions include only "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco*, 764 F.3d 500, 503–04 (5th Cir. 2014). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id.* (internal quotation marks, brackets, and citation omitted).

Under this high standard, the Court finds that Mills has failed to raise a genuine issue of material fact for trial that she suffered an adverse employment action. While she did have to take a remediation course, she retained her position and lost no pay or benefits during that time. Paid administrative or sick leave—without more—is not an adverse employment action. *McCoy v.*

*City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *see generally Breaux v. City of Garland,* 205 F.3d 150 (5th Cir. 2000) (holding in an action under 42 U.S.C. § 1983 that police officer placed on paid administrative leave did not suffer an adverse employment action).  Likewise, the loss of a single day of vacation is not the type of decision leading to an adverse employment action finding.  *See Williams v. E.I. du Pont de Nemours & Co.,* 180 F. Supp. 3d 451, 460 (M.D. La. 2016) (citing  *Jones v. FJC Security Servs., Inc.,* 40 F.Supp.3d 840, 849  (The loss of a single vacation day due to inclement weather is not an "ultimate employment decision" that had a "significant change in employment status" or "significant change in benefits.").

Further, she immediately appealed to the Civil Service Board, was not required to serve probation, and was fully restored.  While it is possible that, as Mills contends, she could have been removed from her position during the probationary period, she did not serve probation, and, thus, Wolverton's actions were, in effect, interlocutory.  *See Belcher v. Roche*, 72 F. App'x 37, 38 (5th Cir. 2003) (plaintiff's claims were inactionable because they were "'interlocutory or mediate' decisions that *might* lead to ultimate decisions rather than 'ultimate employment decisions,' such as hiring, granting leave, discharging, promoting, or compensating.") (citing *Watts v. Kroger Co.*, 170 F.3d 505, 511–12 (5th Cir. 1999)).

Although Mills was subject to some initial action by the City, that action does not rise to the level necessary to support a finding that she was subjected to an adverse employment action, and even that limited action was resolved with the city offering to grant all of Mills' requests with the exception of attorney's fees.  Accordingly, the City is entitled to summary judgment on Mills' race and sex discrimination claims on this element alone.

### b. Similarly Situated Comparators

However, the City also moves for summary judgment on the basis that Mills cannot show the fourth element of her *prima facie* case that she was treated less favorably than those outside the protected class.

Mills opposes summary judgment, contending that the action taken against her was based on sex and race because Wolverton treated her differently than he did two white men for statements they made during the same call, even though they were required to provide the same standard of care, and one of those men, Olague, was a supervisor. Additionally, she alleges that Wolverton treated her differently because he had the anonymous claims against her investigated, even though he had refused to investigate anonymous complaints against a white male assistant chief and two white male captains for public written statements allegedly violating the civil service law.

The City replies that Mills' alleged evidence is insufficient to show that the comparators were similarly situated. First, she does not allege that anyone at the scene ordered sublingual nitroglycerin to be applied topically. One employee did suggest spraying the nitroglycerin down the throat of the patient, as an attempt to apply it orally, but even if this statement by employee were comparable, he is not a supervisor. The other comparator is a supervisor, but his consideration of terminating field efforts when he lost a pulse is simply not analogous. Moreover, the allegations about anonymous complaints is not a nearly identical situation in any way.

Mills has failed to raise a genuine issue of material fact for trial that the City treated her differently from White male comparators in nearly identical situations. First, with regard to the

claims that the City treated her differently because Wolverton investigated an anonymous complaint against her, but not against two white male supervisors, Mills has failed to show that the situation was nearly identical.  By her very explanation, that complaint was about written political statements, not about patient care in the field.

Mills also alleges that she was treated differently based on issues with the same call. Mills was investigated because an anonymous complaint was made that she told firefighters to administer sublingual nitroglycerin topically, but two other employees were not investigated for their statements.  Even if the Court assumed the white firefighter's suggestion that the nitroglycerin should be sprayed down the patient's throat was nearly identical to Mills' alleged statement, he is not a supervisor.  Thus, he is not a proper comparator. The second alleged comparator was, in fact, a captain like Mills, but the Court agrees with the City that any statement he made considering terminating treatment in the field when he did not have a pulse is simply not nearly identical conduct.    Accordingly, the City is entitled to summary judgment on Mills' race and sex discrimination claims on this basis as well.

For these reasons, the Court finds that Mills has not established a *prima facie* case of race or sex discrimination, and the City's Motion for Summary Judgment on her discrimination claims is GRANTED, and these claims are DISMISSED WITH PREJUDICE.[5]

---

[5]The Court finds it unnecessary to reach a full pretext analysis, but would note for the record that Mills has produced no evidence to show that the City's legitimate, non-discriminatory reasons for taking action against her were pretextual.  She has offered no evidence to dispute its contention that all witnesses interviewed consistently testified that she had ordered the use of the sublingual nitroglycerin topically.  While she denies these allegations, the question is not whether she actually gave this command, but whether the City's stated reason was false or pretext for discrimination.   Her belief to the contrary does not raise a genuine issue of material fact for trial.

**C.      Retaliation Under Title VII**

The City has also  moved for summary judgment on Mills' claim that the City retaliated against her by continuing its investigation and disciplining her after she filed a complaint against Wolverton and others for the investigation itself.  In other words, Mills contends that the City's continuation of her investigation was retaliation for filing a complaint about the investigation.

Under Title VII, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e–3(a).

 To establish a claim of retaliation under Title VII, a plaintiff must demonstrate: (1) that she engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a causal link exists between the protected activity and the adverse employment action.  *Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001).

However, the standard for an "adverse employment action" in a retaliation case is "less demanding than an ultimate employment decision."  *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015).  An adverse employment action in this context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006) ). Whether an action meets

this standard is judged by the standard of a "reasonable employee," and will often depend upon the particular circumstances. *Id.* (quoting *Burlington*, 548 U.S. at 69).

The Court assumes *arguendo* that the actions taken against Mills could rise to the level of an adverse employment action under the *Burlington Northern* standard. *See McCoy*, 492 F.3d at 561 ("[W]e recognize that it is at least a close question whether SPD's placing McCoy on paid administrative leave constituted an adverse employment action under the *Burlington Northern* standard."). However, even so, Mills cannot overcome the City's legitimate, non-retaliatory reasons for placing her on paid leave until she could take additional training and a probationary period after that.

The City is clear that it took action against her based on the incident on the  night of the call.  When the City first received a complaint, Wolverton did not immediately take disciplinary action against Mills.  Instead, the matter was referred to Fire Investigator, Robinson, to conduct an investigation.  At the conclusion of his investigation, Robinson reported that all witnesses other than Mills consistently provided information that she improperly ordered the use of sublingual nitroglycerin on the patient's chest.  Only then did Wolverton issue a remediation and probation plan and, even then, she was not demoted, transferred, or subjected to the loss of other benefits.  As previously noted, Mills denies the allegations against her, but offers no evidence that the City's reliance on all other witnesses was false or otherwise pretext for retaliation.  Her allegation that Wolverton "falsely" gave information to the medical directors is again based on her belief that he intended to discriminate against her, knew the information to be false, and actually conveyed that information to the medical directors.  However, she has not produced the evidence to support that belief.  The evidence shows that the City merely continued with its

investigation and made a determination at the end of that investigation. While she claims that the investigation itself was improper, she cannot raise a genuine issue of material fact for trial that the City's actions were retaliatory. Accordingly, the City's Motion for Summary Judgment on her retaliation claim is GRANTED, and this claim is DISMISSED WITH PREJUDICE.

### D. Intentional Infliction of Emotional Distress

The City also moves for summary judgment on Mills' intentional infliction of emotional distress claim under Louisiana law. Mills did not address the City's arguments in her opposition memorandum.

A claim of intentional infliction of emotional distress is brought under Louisiana Civil Code article 2315, the article governing negligence actions. *See* LA. CIV. CODE ART. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."). This cause of action was first recognized in *White v. Monsanto*, 585 So.2d 1205 (La. 1991). In that case, the Louisiana Supreme Court explained:

> One who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> Thus, in order to recover for intentional infliction of emotional distress, a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*Id.* at 1209-10 (internal citations omitted).

> A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger. . . On the other hand, conduct which may otherwise be extreme and outrageous, may be privileged under the circumstances. Liability does not attach where the actor has done no more than to insist upon his legal

rights in a permissible way, even though he is aware that such insistence is certain to cause emotional stress. . . Thus, disciplinary action and conflict in a pressure-packed workplace environment, although calculated to cause some degree of mental anguish, is not ordinarily actionable. Recognition of a cause of action for intentional infliction of emotional distress in a workplace environment has usually been limited to cases involving a pattern of deliberate, repeated harassment over a period of time.

*Id.* at 1210; *see also Stump v. City of Shreveport*, No. CIV.A. 13-3053, 2015 WL 5794474, at

*16 (W.D. La. Sept. 30, 2015).

In this case, viewing the evidence in the light most favorable to Mills, the City's

investigation of a complaint against her, even if the complaint was anonymous, and its

subsequent disciplinary action does not rise to an "extreme" and "outrageous" level. Therefore,

the City's Motion for Summary Judgment on this claim is also GRANTED, and Mills'

intentional infliction of emotional distress claim is DISMISSED WITH PREJUDICE.

### E.      Hostile Work Environment

Mills has also brought hostile work environment claims based on race and sex. Contrary

to the City's assertions, it did not address all her claims because it did not move for summary

judgment on these claims. They remain pending.

### F.      State Court Proceedings and Attorneys' Fees

The City also moves for a determination by the Court that Mills cannot challenge a ruling

by the First Judicial District Court with regard to the appeal from the Civil Service Board. The

City further moves for summary judgment on the issue that Mills is not entitled to seek

attorneys' fees related to her appeal to the Civil Service Board. Mills did not respond to these

arguments.

As the City correctly asserts, the Court lacks jurisdiction to review the First Judicial District Court's ruling on a motion to quash subpoena. To the extent that Mills challenges that ruling, the Court's review is barred under the Rooker-Feldman doctrine. *See Houston v. Queen*, 8 F. Supp.3d 815, 820 (W.D. La. 2014) ("[T]he Rooker-Feldman doctrine bars . . . claims complaining of injuries caused by the state court's judgment and seeking relief that directly attacks the state court's judgment.").

Additionally, if Mills is a prevailing plaintiff on her remaining Title VII claims then she could seek to recover reasonable attorneys' fees under 42 U.S.C. § 1988. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983). Mills could seek to recover attorneys' fees related to the administrative process before the EEOC, a prerequisite to suit. However, she has cited no authority to contradict the City's position that she cannot recover fees related to the Civil Service Board proceeding, which was not a prerequisite to the proceeding before this Court. *See Manders v. State of Oklahoma ex rel. Dept' of Mental Health*, 875 F.2d 263, 267 (10th Cir. 1989) (attorney's fees incurred during the course of internal grievance proceedings were not available under Title VII when "the internal grievance procedure [is] is not a prerequisite to the plaintiffs' filing a Title VII action."); *Dixon v. Int'l Bhd. of Police Officers*, 434 F.Supp.2d 73, 80 (D. Mass. 2006) (attorney's fees incurred during disciplinary and administrative hearings before the City of Lowell and the Massachusetts Civil Service Commission were for "collateral matters not statutorily required to instigate the private Title VII suit[,]" and, thus, the Court would not award these fees. Accordingly, the City's Motion for Summary Judgment on these issues is GRANTED as well.

20

## III.    CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment [Doc. No. 20] is GRANTED.  Mills' claims of discrimination and retaliation under Title VII, her state law claim of intentional infliction of emotional distress, and her claim for attorneys' fees related to the Civil Service Board hearing and the appeal to the First Judicial District Court are DISMISSED WITH PREJUDICE.  To the extent that Plaintiff seeks to have this Court review the rulings of the First Judicial District Court, that review is barred.

Her Title VII hostile work environment claims remain pending.

MONROE, LOUISIANA, this 21st day of June, 2019.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE