# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| **DEBORAH MILLS** | **CIVIL ACTION NO. 5:17-1088** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **CITY OF SHREVEPORT** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Plaintiff Deborah Mills ("Mills") brought this employment discrimination action against her current employer, the City of Shreveport ("the City"). Before the Court is a Motion for Summary Judgment on Plaintiff's Hostile Work Environment Claims ("Motion for Summary Judgment") [Doc. No. 34] filed by the City. Mills opposes the motion. [Doc. No. 36]. The City filed a Reply [Doc. No. 37].

For reasons assigned below, the Motion for Summary Judgment is GRANTED.

**I.   FACTS AND PROCEDURAL HISTORY[1]**

Mills is employed by the City as a Captain with the Shreveport Fire Department ("SFD"). She serves as an EMS Supervisor.

---

[1] In her "Traversal of Statement of Facts," Mills responds to the City's Statement of Undisputed Facts [Doc. No. 36-1] by denying several statements "as written." In its previous Ruling [Doc. No. 29] on the City's first Motion for Summary Judgment, the Court pointed counsel to the local rules. Local Rule 56.1 provides that the moving party must accompany its motion for summary judgment with a "separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.2 provides that the opposing party "shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." As the Court has already pointed out once, merely denying the City's statement "as written" provides no clue as to what part of the statement she denies and what part she admits. Therefore, the Court has had, again, to rely on the memoranda and evidence to determine what facts are truly undisputed or disputed.

On December 10, 2015, the SFD received a call requesting assistance for a patient experiencing cardiorespiratory distress.

The crew of Fire Engine-8 responded to the call and found the patient face down in a bathtub, bleeding from her mouth and nose. The patient had no pulse and had stopped breathing. The firefighters began CPR in an attempt to restore the patient's pulse and inserted a "King LT" airway device, which is a laryngeal tube that allows for mechanical ventilation.

An SFD ambulance unit, "Sprint-8," arrived at the scene as the crew of Fire Engine-8 continued to provide emergency care. Mills, acting in her capacity as EMS Supervisor, also responded to the scene separately in her department vehicle (Unit C-82).

Mills contacted the physician at the Willis-Knighton North emergency room and requested that the physician authorize the administration of nitroglycerin as the patient was not responding to the other treatment. According to firefighters, a pulse was detected.

The City contends that Mills had obtained authorization to administer nitroglycerin sublingually, but that when the patient's mouth could not be accessed, she ordered responders to rub the nitroglycerin into the patient's chest. It is not within protocol to administer sublingual nitroglycerin topically to the chest. [Doc. No. 20, Exh. A, pp. 30-31; Exh. A-6]. The responders did not follow Mills' alleged instructions. In support of these allegations, the City provided copies of complaints received about the incident. [Doc. No. 20, Exh. A-4 & A-5].

Mills denies these allegations, however. She further contends that, during this same incident, a male firefighter suggested nitroglycerin be sprayed down the patient's throat, which is not protocol. She further contends that another male firefighter suggested field termination of

2

treatment without talking to the family or EMS supervisor, also contrary to protocol. Neither of these firefighters was a supervisor, nor did either of the suggested actions take place.

Mills was advised on January 8, 2016, that an internal affairs investigation had been initiated. On January 12, 2016, the investigation was assigned to Fire Investigator Chris Robinson ("Robinson"). From January 12, 2016, to February 8, 2016, Robinson conducted eyewitness interviews. According to Robinson, all firefighters who were witnesses to the event said that Mills issued the command to apply the sublingual nitroglycerin topically. On January 26, 2016, Robinson interviewed Mills, who denied issuing the command.

On February 8, 2016. Robinson issued an investigation report to Chief Wolverton, finding that Mills had given treatment orders in violation of departmental rules and regulations.

On February 23, 2016, four physicians who serve as EMS medical directors and under whose licenses the EMS personnel provide emergency services wrote a letter to Chief Wolverton expressing concerns about Mills' alleged conduct. Mills contends that the letters were generated at the request of Chief Wolverton and based on false information provided to the physicians by Chief Wolverton.

On March 4, 2016, Chief Wolverton was advised that Mills had requested copies of any variances or complaints on her that had gone to the Quality Review Board. Mills' request was denied at that time, and later that day she was advised that the Pre-Disciplinary Conference had been set for March 7, 2016. Mills responded that she was on vacation, and her counsel was not available on March 7, 2016, but Chief Wolverton insisted that the Pre-Disciplinary Conference go forward on that date. The Pre-Disciplinary Conference was held on March 7, 2016, and Mills

was informed of the evidence supporting the alleged violation of department rules and regulations. While she was permitted to respond, she did not have her counsel present.

On March 21, 2016, Mills made a confidential complaint to Human Resources about Chief Wolverton; Firefighters David White, Jeff Cameron, Daniel Buckingham; Engineers Evan Bayton, Jason Matthews, and Chris Elmore; Fire Captains Bobby Roberts and Todd Olague; and Dr. Avery Callahan, alleging harassment on the basis of sex and race. She alleged that the complaint against her was not proper because it was anonymous and procedures were not followed. She further alleged that she and another female captain had been the subject of "great opposition and resistance from the beginning." [Doc. No. 20, Exh. B]. She indicated that "work is a hostile work environment." *Id.*

On May 5, 2016, Mills met with Chief Wolverton and received a remediation plan. She was placed on paid suspension from practicing as a paramedic until she completed remediation training between May 9 and 30, 2016. She was further placed on probation for one year. Because of the City's actions, Mills contends that she suffered a loss of pay from her lack of ability to practice as a paramedic while off duty.

On May 6, 2016, Mills filed an appeal of Chief Wolverton's decision, and a Civil Service Board Hearing was scheduled for September 7, 2016.

On May 8, 2016, Mills filed a supplementary request with the Civil Service Board that it "investigate the suspension of [her] paramedic privileges," as well as "the practices and acts of . . . Chief . . . Wolverton and Captain Todd Olague." [Doc. No. 20, Exh. E]. She detailed the alleged actions against her and asserted that she had been subjected to discrimination because she

is "black and female," retaliation for the harassment complaint she made, and that "[t]his is becoming more and more a hostile work environment." *Id.*

On May 23, 2016, prior the Civil Service Board Hearing, Mills completed remediation training, but she remained on probation.

On September 7, 2016, a Civil Service Board Hearing was held.

After her counsel had conducted a lengthy cross examination of Chief Wolverton (the first witness at the hearing), the City offered to resolve the matter by granting Mills all of her requests with the exception of attorney's fees. As part of the agreement, Mills was removed from probation effective immediately; Chief Wolverton would issue a new Variance Policy requiring all complaints regarding patient care issues be filed in writing through the procedures set forth in the policy, prohibiting employees from filing complaints anonymously or making verbal complaints to the Medical Director, and subjecting employees to discipline if they do so; the City agreed to pay for a mediator to meet with Mills and Dr. Callahan to address any lingering issues; and Chief Wolverton would discuss the anonymous complaint with Dr. Callahan to investigate and determine how she received it. [Doc. No. 25-5, Exh. 27]. Mills continued her duties as EMS supervisor in the same capacity, for the same pay, as before the investigation. The Civil Service Board awarded Mills $1,000 in attorney's fees to be paid by SFD, over SFD's objection. *Id.*

SFD appealed the attorney's fee ruling to the Louisiana First Judicial District Court, which affirmed the award.

On October 3, 2016, Mills filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging harassment, discrimination, and retaliation on the

basis of sex and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and LA. REV. STAT. 23:332, *et seq.*, for the time period of January through August 2016. There is no "box" for hostile work environment on the EEOC charge, but the box for "other" was checked, and "Harassment" was typed beside that box.

On July 27, 2017, the EEOC terminated its proceedings because more than 180 days had passed since it issued a Notice of Right to Sue to Mills.

On August 29, 2017, Mills filed the Complaint[2] in this Court asserting sex and race discrimination and harassment claims, as well as retaliation claims, all under Title VII*,* and for intentional infliction of emotional distress under Louisiana law. She sought declaratory and injunctive relief and damages.

On April 8, 2019, the City filed a Motion for Summary Judgment [Doc. No. 20], seeking judgment as a matter of law on Mills' discrimination and retaliation[3] claims under Title VII and her intentional infliction of emotional distress claim under state law.

On April 29, 2019, Mills filed a memorandum in opposition to the Motion for Summary Judgment [Doc. No. 25].

---

[2] On April 9, 2019, Mills filed an Amended Complaint [Doc. No. 24] re-asserting her prior claims against the City; asserting claims against Chief Wolverton in his individual capacity under 42 U.S.C. §§ 1981 and 1983, as well as state law; and adding claims against the City under 42 U.S.C. §§ 1981, 1981a, and 1983. However, Mills did not obtain leave of Court to do so, and, at the Court's direction, on June 21, 2019, a notice of deficiency was issued to her. Mills did not correct the deficiency by filing a motion for leave, and, on July 22, 2019, the Magistrate Judge struck the Amended Complaint. [Doc. No. 33].

[3] The Court mistakenly referred to the City's Motion for Summary Judgment as moving for judgment on Mills' discrimination and "harassment" claims in its previous ruling. The City did NOT do so. It moved for summary judgment only on Mills' discrimination, retaliation, and intentional infliction of emotional distress claims.

On May 14, 2019, the City filed a reply. [Doc. No. 28]. Although the City asserted that "[a]ll of Plaintiff's clams should be dismissed as a matter of law," the City did not move for summary judgment on or address Mill's hostile work environment claims.[4]

On June 21, 2019, the Court issued a Ruling [Doc. No. 29] and Judgment [Doc. No. 30] granting the City's Motion for Summary Judgment and dismissing all of Mills' claims except for her hostile work environment claims.

On July 29, 2019, the City filed the instant Motion for Summary Judgment [Doc. No. 34]. On August 20, 2019, Mills filed an opposition [Doc. 36]. On August 27, 2019, the City filed a reply [Doc. No. 37].

The motion is now ripe.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the

---

[4] The City did not move for summary judgment on Mills' new claims in the Amended Complaint because the Amended Complaint was filed after the instant motion. However, as the Court has pointed out, those claims were not properly before it anyway.

7

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

**B.    Title VII**

Mills alleges that the City subjected her to a hostile work environment on the basis of her sex and race. The City moves for summary judgment on these remaining claims, arguing that she has failed to exhaust her administrative remedies by raising this claim to the EEOC charge, that the Court's prior rulings foreclose this claim as well, and that Mills has failed to present sufficient evidence to support such a claim.

Mills responds that an EEOC charge is construed liberally, that she adequately presented her claim to the EEOC, and that she has raised a genuine issue of material fact for trial.

In reply, the City again contends that Mills did not exhaust her administrative remedies with the EEOC, that the materials upon which she relies should be stricken or not considered, and that, regardless, she has no evidence the City had a discriminatory motive for its actions.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1). When an employee has been subjected to harassment on the basis of sex or race sufficient to create a hostile work environment, such claims are actionable under Title VII. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Faragher v. City of*

9

*Boca Raton*, 524 U.S. 775 (1998); *see also Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393 (5th Cir. 2007). .

### 1. Scope of the EEOC Charge

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996)). "Although [the] filing of an EEOC charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'" *Taylor*, 296 F.3d at 379 (quoting Dao, 96 F.3d at 789).

"The scope of inquiry of a court hearing in a Title VII action 'is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination.'" *Young v. City of Houston, Texas*, 906 F.2d 177, 179 (5th Cir. 1990). d. (quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970)). As the Fifth Circuit has explained, the logic behind this rule is based on statutory intent:

> A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

431 F.2d at 466; *see also Benson v. Mary Kay, Inc.*, No. 3:06-CV-1911-R, 2007 WL 1719927(N. D. Tex. June 11, 2007) ("This requirement serves the dual purposes of giving the employer some warning as to the conduct about which the employee is complaining and affording the EEOC and the employer an opportunity to settle the dispute through conciliation.") (citing *Sanchez*, 431 F.2d at 466). However, an EEOC charge should be construed liberally to encompass "any kind of discrimination like or related to the charge's allegations." *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983).

In this case, Mills filed an EEOC charge in which she alleged discrimination based on race and sex and also checked the "other" box and indicated that she suffered "Harassment" on these prohibited bases as well. There is no box for "hostile work environment." She articulated her claim as follows:

> I have been harassed, discriminated, and retaliated against due to my race and sex. I am a black female Captain on the Shreveport Fire Department. I have a good record and my quality of work is good. I was promoted to EMS Supervisor in January 2014. Thereafter, white men who I was now supervising filed unfounded complaints but Fire Chief Mulford properly refused to act on the complaints as they were "singling me out." In 2015 Scott Wolverton was named Fire Chief and he has allowed and participated in the discrimination and harassment against me.

[Doc. No. 20, Exh. F, Charge of Discrimination]. In addition, on a second sheet, among other allegations, Mills detailed the issues that had arisen since the January 2016 EMS call.

These allegations are sufficient to constitute exhaustion on Mills' hostile work environment claims. Contrary to the City's apparent contention, a plaintiff need not list the elements of a hostile work environment to exhaust her remedies, and she may, in fact, rely on one set of facts to raise both discrimination and harassment claims. *See Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279-80, 1279 n.4 (5th Cir. 1994) (a claimant may rely on a single set of

11

facts to support claims of both harassment and discrimination, but the two causes of action are distinct, and she must show that she exhausted her administrative remedies as to both claims).

In *Clark*, the Fifth Circuit determined that an employee had exhausted her claim of disparate treatment based on gender, even though the charge of discrimination referred only to sexual harassment. In that case, the claimant, who was pro se, alleged that "'1. I was harassed because of my sex, female. 2. I was sexually harassed.'" *Id.* at 1280. The charge itself never used the terms "gender discrimination," "sex discrimination," or "disparate treatment." However, the Fifth Circuit looked to Clark's affidavit and discharge questionnaire, both of which identified gender disparities in job assignment and pay. In addition, the Fifth Circuit found that Kraft, the employer, understood Clark to have alleged gender discrimination because it had "denied the existence of any 'evidence that female employees are more frequently terminated or otherwise more harshly treated in the disciplinary process.'" *Id.* Although the Fifth Circuit was "mindful that the actual scope of an EEOC investigation does not determine whether a claim is exhausted," the Court was also "mindful that investigation of a particular claim creates a strong inference that such a claim was presented." *Id.* Based on the particular facts of this case, the Fifth Circuit concluded that "sexual harassment and retaliation . . . were Clark's principal allegations at the administrative stage," but that it is "also apparent in the statements of Clark, Kraft, and the EEOC that Clark raised a gender-based disparate treatment claim sufficient to prompt an EEOC investigation." *Id.* at 1281.

In support of her harassment claims, Mills alleged conduct that could be characterized as both discrimination and harassment in the form of hostile work environment. Further, it is clear in the documents submitted to the City that it was on notice that she alleged she was working in a

hostile environment. Therefore, the Court finds that Mills exhausted her administrative remedies and proceeds to a review of her substantive claims of harassment.

### 2. Hostile Work Environment

"To establish a prima facie case of hostile work environment, a plaintiff must show: (1) that [s]he belongs to a protected group; (2) [s]he was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or sex]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action." *Watkins v. Texas Dept. of Criminal Justice,* 269 Fed. App'x. 457, 463 (5th Cir. 2008). If the harassment is allegedly committed by a supervisor with immediate or successive authority over the victim, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher*, 524 U.S. at 807).

Fifth Circuit precedent makes it clear that subjective belief of race- or sex-based motivation cannot import animus into an individual's conduct, and, without objective evidence, is insufficient to create a *prima facie* claim for a hostile work environment under Title VII. *See, e.g., Lyles v. Texas Alcohol Beverage Com'n*, No. 09-20714, 2010 WL 2103006, at *4 (5th Cir. May 24, 2010); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x. 104, 107 (5th Cir. 2009); *Johnson v. TCB Const. Co., Inc.*, 334 Fed. App'x. 666, 671 (5th Cir. 2009); *Garza v. Laredo Indep. Sch. Dist.*, 309 Fed. App'x. 806, 809 (5th Cir. 2009); *Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed. App'x. 322, 329 (5th Cir. 2008); *Ellis v. Principi*, 246 Fed.App'x. 867, 871 (5th Cir. 2007); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x. 913, 917 (5th Cir. 2006).

Additionally, not all "harassment" is actionable; "it must be sufficiently severe **or** pervasive to alter conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, LLC,* 433 F.3d 428, 434 (5th Cir.2005) (alteration in the original; emphasis added). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Id.* In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris*, 510 U.S. at 23. "Isolated incidents do not support a hostile work environment claim unless the complained-of incident is 'extremely serious' in nature." *Higgins v. Lufkin Indus., Inc.*, 633 F.App'x 229, 235 (5th Cir. 2015). To have been pervasive in the work place, there must have been a "steady barrage" of such comments. *Torrez v. Milk Prods.*, L.P., 402 F.Supp.2d 773, 779 (W.D. Tex. 2005).

Finally, it is not the business of the federal courts to address personality conflicts in the workplace. If an employee alleges a hostile work environment, but there is insufficient evidence to support the claim that it is based on race or gender animus, summary judgment is appropriate. *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 n.4 (5th Cir. 2012) (" 'Slights ... that often take place at work and that all employees experience, personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers are not actionable' under Title VII." (brackets and ellipses omitted) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *Dixon v. Henderson*, 186 Fed. App'x. 426, 428 (5th Cir. 2006) (per curiam)

14

(affirming lower court's denial of plaintiff's hostile work environment claim, because the "alleged mistreatment was caused by a personality conflict with his supervisor, not animus based upon race or gender"); *Indest v. Freeman Decorating, Inc*., 164 F.3d 258, 264 (5th Cir. 1999) ("Discourtesy or rudeness[ ]... will not amount to discriminatory changes in 'terms and conditions of employment.'");*McConathy v. Dr. Pepper/Seven Up Corp*., 131 F.3d 558, 564 (5th Cir. 1998) ("It is a simple fact that in a workplace, some workers will not get along with one another, and this [c]ourt will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense.").

In its Motion for Summary Judgment, the City concedes that Mills is a member of a protected class (as a black woman), but argues that she cannot establish that she was subjected to harassment based on her race or sex, nor can she establish that any of the actions of the City constituted a hostile work environment under Title VII. The City argues further that Mills has failed to point to conduct that was "even arguably based on her race or gender, much less the type of 'severe' or 'pervasive' actions Title VII protects against." [Doc. No. 34-1, p. 11].

Mills opposes summary judgment, contending that she suffered a hostile work environment based on her race and sex because Chief Wolverton "used drastically different standards for [her] and other black officers than he used for white male officers," he and other white officers "made racial comments and no actions were taken," he lied to start an investigation against her, so he could place her on one-year probation, he helped a white male captain get information about her to file a complaint, and he has "continued harassment of her" after the Civil Service Board appeal. [Doc. No. 36, p. 1]. In summary, she contends that "[Chief] Wolverton has continued to single out Mills and treat her differently and more harshly

than white officers and male officers. His dramatically different treatment of her compared to white employees caused her humiliation, stress, effected [sic] her reputation, and impacted her ability to perform her duties." *Id.* at p.2. In addition to the evidence and arguments she has previously relied on, as part of her opposition, Mills lists several allegations for the first time:

(1) In 2015 Chief Wolverton took no action against a white male paramedic, Chris Bradford, who allegedly made a cup of coffee before responding to a code;

(2) Chief Wolverton took no action against another white male paramedic, Jason Johnson, who allegedly committed a series of improper actions during EMS calls at different times;

(3) In the fall of 2016, Chief Wolverton took no action against a white male SFD Captain, Todd Olague, who allegedly watched inappropriate movies on SFD computers;

(4) Some time in 2019, Chief Wolverton failed to discipline an SFD Battalion Chief, Jerry Thompson, who allegedly shouted a racial slur during a Battle of the Badges event live on Facebook;

(5) Thompson also allegedly persuaded a nursing home manager to lie about another black female SFD Captain, Felicia Scroggins, who was investigated, but no action was taken against him when the manager admitted Thompson told her to lie;

(6) In July 2016, Chief Wolverton allegedly made a comment to Mills that he has adopted black children which made her "feel very uncomfortable and left the impression that race was a factor in his actions";

(7) In March 2019, Chief Wolverton ordered Mills to take a drug screen after she reported that drugs were missing after performing an inventory; and

(8) In May 2019, variance that Mills submitted about the allegedly improper conduct of white male paramedics was not acted upon by Chief Wolverton or SFD's Chief of EMS.

The City filed a reply in which it argues that Mills improperly relies on post-complaint allegations that were never presented to the EEOC and never before alleged in this case. Further, even if the Court reviews all Mills' arguments and evidence, the City argues that she is "simply repackaging the arguments she put forward in support of her baseless claims of discrimination and retaliation," she has no evidence that the SFD had a discriminatory motive, and her subjective belief otherwise is not enough to sustain the viability of a hostile work environment claim.

First, the Fifth Circuit has often held, in both reported and unreported opinions, that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). On the other hand, "[u]nder certain compelling circumstances, [the Fifth Circuit has] required district courts to construe a new claim raised in opposition to summary judgment as a motion to amend." *Harry v. Dallas Hous. Auth.*, 662 Fed.App'x. 263, 270 (5th Cir. 2016). The "compelling circumstances" have usually included a plaintiff appearing *pro se* or serious errors by the plaintiff's counsel. *Id.*

In this case, however, Mills has been represented by competent counsel since well before this case was filed. Further, when she attempted to amend her Complaint without the required leave, she was issued a deficiency notice and given the opportunity to seek leave. She could have made arguments why she should be allowed to proceed with new factual allegations two years into this case, including that this was an on-going case of alleged harassment against a current employee. Mills failed to take advantage of this opportunity and instead just makes her new allegations in the opposition. Therefore, under the circumstances in the present case, the Court finds that it is inappropriate to consider her new allegations as a motion to amend.[5] Instead, Mills' new allegations are not properly before the Court. *See also Roberts v. Lubrizol Corp.*, 582 Fed. App'x. 455, 461 (5th Cir. 2014) (holding that harassment claim raised for first time in summary-judgment response was not properly before the district court even though complaint generally used terms such as "harassment" and "hostile work environment" because "plaintiff expressly and clearly laid out two causes of action—one for discrimination and one for retaliation"); *Green v. JP Morgan Chase Bank, N.A.*, 562 Fed. App'x. 238, 240 (5th Cir. 2014) (affirming refusal to consider new factual theory).

Without these new allegations, Mills seeks to rely on the same evidence and arguments she presented in support of her opposition to the City's first Motion for Summary Judgment. Although the elements are different and separate from those for a discrimination or retaliation claim, in each case, a plaintiff must raise a genuine issue of material fact for trial that she

---

[5] The Court has considered that discovery did not close under the current scheduling order until August 26, 2019, and that trial is not set until February 2020. However, the fact remains that Mills did not supplement prior discovery responses or make any effort to report these new allegations until after the second Motion for Summary Judgment was filed.

18

suffered actions by the defendant because of her race or sex.  In discussing her claims previously, the Court articulated that Mills had failed to raise a genuine issue of material fact for trial that she suffered an adverse employment action or that she was treated differently from similarly situated white male comparators for purposes of her discrimination claim and that Mills to raise a genuine issue of material fact for trial on any causal link between protected activity and the materially adverse actions taken against her.  Under the hostile work environment standard, Mills has failed to raise a genuine issue of material fact for trial that she has been subjected to severe or pervasive conduct based on her race and/or sex.

Finally, out of an abundance of caution, and given the somewhat conflicting Fifth Circuit precedent, the Court finds that, even assuming arguendo Mills were permitted to proceed with new factual allegations, she has failed to establish she was subjected to severe or pervasive conduct constituting a hostile work environment and that such conduct was based on race or sex.  Mills recounts a series of actions or inactions taken by the City through its employees and attributes racial and/or sexual/gender animus to those actions and inactions.  However, she presented no evidence other than her own subjective belief that the actions allegedly taken against her were based on her race or sex.  Mills' allegations largely center around Chief Wolverton, but she has not alleged that he uses racial epithets or slurs or has made derogatory statements about women, toward her or anyone else.  She attributes one statement to Wolverton, that he adopts black children, as evidence of his race-based animus.  While she claims this statement is false (and the Court has no information whether Chief Wolverton does or does not adopt black children), regardless, it is unclear how such a statement indicates that he is biased against black employees.  She also asserts that another employee, who is not a supervisor over

19

her, used an unidentified racial slur at an unidentified time during a Facebook live event. This evidence, even when viewed in the light most favorable to Mills, is insufficient to raise a genuine issue of material fact for trial.

Further, the types of allegations Mills raises in this case do not suggest that she has been subjected to conduct so severe or pervasive as to raise a genuine issue of material fact for trial.

While Mills may subjectively believe that she has been treated differently and more harshly because of her race and/or gender, neither her subjective belief or that of others is enough to present this case to a jury. The Court finds that Mills has presented no genuine issue of material fact regarding whether she was subjected to harassment based on race or gender, and therefore she has failed to present a *prima facie* case for a hostile work environment under Title VII. Therefore, the Court GRANTS the City's Motion for Summary Judgment on this remaining claim.

## III. CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment [Doc. No. 34] is GRANTED, and Mills' remaining hostile work environment claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 17th day of September, 2019.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE